WILLIAM M. ADAMS, JR. AND SHARON KAY ADAMS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Adams v. Commissioner
Docket No. 4364-86.
United States Tax Court
T.C. Memo 1989-91; 1989 Tax Ct. Memo LEXIS 91; 56 T.C.M. (CCH) 1394; T.C.M. (RIA) 89091; March 7, 1989; As amended March 7, 1989 Harris H. Barnes, III, Gordon Broom and James K. Dossett, Jr., for the petitioners. J. Craig Young, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies in petitioners' 1982 and 1983 income taxes in the respective amounts of $ 7,865 and $ 14,123. After concessions, [1] the only issue for decision is whether petitioner William M. Adams, Jr. (hereinafter referred to as petitioner in the singular) was a qualified individual under section *93 911(a)[2] during the years at issue for purposes of the foreign earned income exclusion. *94 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits associated therewith are incorporated herein by reference. Petitioners resided in Brookhaven, Mississippi at the time of filing their petition. They filed joint Federal income tax returns for 1982 and 1983 and an amended return for 1982 with the Internal Revenue Service Center in Atlanta, Georgia. Respondent issued a notice of deficiency to petitioners for the taxable years 1982 and 1983 on November 18, 1985. Petitioner was employed by Marlin Drilling Company from March, 1980 through May, 1981. During this period, he worked as a driller on an offshore drilling rig located in the territorial waters of Brazil. On May 25, 1981, petitioner began his employment with Griffin-Alexander Drilling Company ("Griffin"). While working for Griffin, petitioner worked as both a driller and a toolpusher. A driller oversees the actual drilling of the well and is second-in-command on a rig. Drillers on Griffin's offshore rigs generally worked twelve-hour shifts, and, as a consequence, two drillers were employed per rig. A toolpusher is the single senior individual on a rig *95 and is in charge of the entire drilling operation. Toolpushers are on call 24 hours per day. While working for Griffin, petitioner was assigned to rigs located in the territorial waters of the United States, Brazil and India for the following periods: From
To
Location
Position
May, 1981
May, 1982
United States
Driller
May 10, 1982
Mid June, 1982
Brazil
Driller
July, 1982
January, 1985
India Toolpusher
The rigs located in the territorial waters of Brazil and India and on which petitioner served in 1982 and 1983 were movable "jack-up" rigs usable in water up to 200 feet deep and positioned anywhere from three to fifteen miles off shore. If the rig to which petitioner was assigned was moved from one location to another, petitioner was to continue working on the rig at the new location. Petitioner preferred assignments to overseas rigs in order to receive substantial bonuses. Petitioner's presence in the territorial waters of Brazil and India during 1982 and 1983 was consequently due to his employment and the desire to earn more money. Petitioner's work schedule on rigs located in foreign territorial waters generally consisted of alternate *96 work and rest periods of 28 days each. [3] During work periods, petitioner lived and worked on his assigned rig, and was provided with food, lodging and laundry at Griffin's expense. [4] The only time he spent on the mainland of Brazil or India was during short layovers of a few hours while en route to or from his assigned rig. At the end of each work period, petitioner immediately returned to his home and family in Mississippi and remained there throughout his rest period. Griffin provided petitioner with roundtrip airline tickets between New Orleans, Louisiana, and the nearest airport to his assigned rig. Both petitioners have lived in Mississippi since childhood and throughout their marriage. They also have numerous friends and relatives living in Mississippi. Petitioner and his wife purchased their home in Brookhaven, Mississippi in 1978. Petitioner's wife and children lived in this home throughout 1982 and 1983. Petitioner also kept all his personal *97 property, other than some clothes, boots, shaving kit, and books which he left on his assigned rig, in his Brookhaven home. During 1982 and 1983, petitioner had bank accounts in Mississippi, was registered to vote there and had a Mississippi driver's license. Petitioner did not investigate living conditions on the Brazilian mainland while working in that country's territorial waters. He also never considered moving his family to Brazil. After a cursory examination of living conditions in the area of India in closest proximity to the location of his stationed rig, petitioner decided that he did not want his family living in that country because of the area's harsh living conditions, the absence of appropriate schools for his young children, and the fact that his family would be alone on the Indian mainland during his 28-day on duty rotations. Petitioner did not pay income taxes to any foreign country during 1982 and 1983 although Griffin paid an undetermined amount on petitioner's behalf. Petitioner received wages from Griffin and claimed a foreign earned income exclusion under section 911(a)(1) pursuant to the "bona fide resident" test under section 911(d)(1)(A) for the years *98 and in the amounts set forth below: Foreign Earned
Taxable Year
Wages
Income Exclusion
1982
$ 58,116.41
$ 24,750
1983
$ 73,218.96
$ 47,200
Petitioner was in Brazil or India for only 120 full days in 1982 and in India for only 217 full days in 1983. The parties have, therefore, stipulated that petitioner does not qualify for a foreign earned income exclusion under section 911(d)(1)(B) because he fails to meet the "physical presence test." [5]
OPINION Section 911(a)(1) permits qualified individuals to elect to exclude foreign earned income from their gross income. To qualify a taxpayer is required by section 911(d)(1) to be: an individual whose tax home is in a foreign country and *99 who is -- (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or (B) a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during at least 330 full days in such period. Since the parties have stipulated that petitioner does not meet the "physical presence test" of section 911(d)(1)(B), petitioner must prove in order to qualify for the exclusion that, during each of the years 1982 and 1983, his tax home was in a foreign country and that he was a "bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year." Section 911(d)(1)(A). "Tax home" is defined in section 911(d)(3) as being: such individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home). An individual shall not be treated as having a tax home in a foreign country for *100 any period for which his abode is within the United States. For the sake of argument, we acknowledge that for purposes of section 162(a)(2) petitioner's tax home in 1982 and 1983 may well have been in Brazil or India -- places of his employment. Nevertheless, under section 911(a) petitioner must still establish that his "abode" was not in the United States. With regard to the meaning of abode, section 1.911-2(b), Income Tax Regs., states: Temporary presence of the individual in the United States does not necessarily mean that the individual's abode is in the United States during that time. Maintenance of a dwelling in the United States by an individual, whether or not that dwelling is used by the individual's spouse and dependants, does not necessarily mean that the individual's abode is in the United States. In Bujol v. Commissioner,T.C. Memo. 1987-230, affd. without published opinion 842 F.2d 328 (5th Cir. 1988), we considered the meaning of the word "abode" as used in section 911(d)(3) and stated: "Abode" has been variously *101 defined as one's home, habitation, residence, domicile, or place of dwelling. Black's Law Dictionary 7 (5th ed. 1979). While an exact definition of "abode" depends upon the context in which the word is used, it clearly does not mean one's principal place of business. Thus "abode" has a domestic rather than vocational meaning, and stands in contrast to "tax home" as defined for purposes of section 162(a)(2). [53 T.C.M. 762, 763-764, 56 P-H Memo. T.C. par. 87,230 at 1112-87; footnote ref. omitted.] [6]
During the years in issue petitioner obviously maintained significant ties to the United States. At the beginning of each rest period he immediately returned to Mississippi where his family resided in a residence purchased by petitioners in 1978. Consequently, during the years in issue, he spent about 50 percent of his time with his family in Mississippi. Furthermore, throughout these years petitioner also had *102 bank accounts in Mississippi, had a Mississippi driver's license and was registered to vote there. By contrast, during these years petitioner had only minimal contact with India or Brazil. His work periods were spent on the offshore rig and his only contact with the mainland was during layovers of a few hours en route to or from Mississippi on each of his rest periods. We conclude, therefore, that petitioner's abode remained in the United States during the periods in issue and consequently he does not qualify for the earned income exclusion provided by section 911. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. In explaining the source of the deficiencies appearing in petitioners' notice, respondent focused on petitioners' 1983 deficiency and explained, It is determined that for 1983 you received taxable interest income of $ 281.00 from Internal Revenue Service that was not reported on your return. Therefore, your 1983 taxable income is increased $ 281.00. Due to the increase in your 1983 adjusted gross income, your allowable sales tax deduction is $ 728.00 instead of $ 431.00 shown on your 1983 return. Therefore, your 1983 taxable income is decreased by $ 297.00. Note: Since you have received a lump-sum distribution from a qualified retirement plan, (Republic Bank of Houston), which qualifies for the special ten-year averaging method, the distribution has been excluded from your total income and has been added to Form 4972 for the proper tax computation. See Schedule 5. In their trial memorandum and brief, petitioners have not addressed the issues tied to their receipt in 1983 of taxable interest income and a lump-sum distribution from a qualified retirement plan; therefore, we conclude that they have conceded these issues. Money v. Commissioner,89 T.C. 46, 48 (1987); Barbara Coal Co. v. Commissioner,T.C. Memo. 1987-466, n.29, affd. without published opinion 853 F.2d 916 (3d Cir. 1988); Parker Tree Farms, Inc. v. Commissioner,T.C. Memo. 1983-357, n.6, affd. without published opinion 813 F.2d 402↩ (4th Cir. 1986). 2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue unless otherwise indicated. Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Individuals working on rigs in the Gulf of Mexico generally worked schedules of alternate work and rest periods of 7 or 14 days each. ↩
4. While on the rig, petitioner's sole expense was the purchase of cigarettes.↩
5. The parties' stipulation 11 provided that "petitioner was not physically present in a foreign country or countries for at least 330 full days during any period of 12 consecutive months which began or ended during the taxable years 1982 and 1983." As a result of this stipulation, petitioner is not a "qualified individual" as that term is defined in sec. 911(d)(1)(B)↩.
6. See also LeMay v. Commissioner,837 F.2d 681 (5th Cir. 1988), affg. T.C. Memo. 1987-256; Bosarge v. Commissioner,T.C. Memo. 1989-15; Bassett v. Commissioner,T.C. Memo. 1988-218↩.